**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PRISCILLA K., [1]<br><br>     Plaintiff,<br><br>     v.<br><br>FRANK BISIGNANO, [2]<br>Commissioner of Social Security,<br><br>     Defendant. | Case No. 2:24-cv-09199-MAA<br><br>**MEMORANDUM DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

## I.     INTRODUCTION

On February 8, 2022, Plaintiff Priscilla K. ("Plaintiff") filed a Complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying her application for supplemental security

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Frank Bisignano became Commissioner of Social Security on May 6, 2025. Under Federal Rule of Civil Procedure 25(d), he is automatically substituted for Martin O'Malley as Defendant in this suit.

income under Title XVI of the Social Security Act.  (Compl., ECF No. 1.)  Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a United States Magistrate Judge.  (ECF Nos. 6, 7.)  On December 20, 2024, Defendant filed an Answer (Answer, ECF No. 9) and Certified Administrative Record ("AR," ECF Nos. 9-1–9-8).  On March 17, 2025, the Court ordered Plaintiff to show cause why the case should not be dismissed for lack of prosecution.  (ECF No. 10.)  On April 16, 2025, Plaintiff filed an Opening Brief.  (Pl.'s Br., ECF No. 11.)  On June 6, 2025, Defendant filed a Response Brief.  (Def.'s Br., ECF No. 14.)  Plaintiff did not file a reply brief.  (*See* docket.)  This matter is fully briefed and ready for decision.

The Court deems the matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons discussed below, the Court reverses the decision of the Commissioner and remands the matter for further administrative proceedings.

## II.   SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On February 8, 2022, Plaintiff filed a Title XVI application for supplemental security income benefits, initially alleging disability beginning April 20, 2021 (*id.* at 279, 281) and amending such date to February 8, 2022 (*id.* at 76).[3]  On April 28, 2023, after her application was denied initially and upon reconsideration (*id.* at 185, 192), Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (*id.* at 200).

ALJ David Lacy conducted a telephonic hearing on January 16, 2024.  (*Id.* at 71–96.)  The ALJ heard testimony from Plaintiff (*id.* at 78–89), who was represented by counsel, and from an impartial vocational expert (*id.* at 89–94).  On

///

---

[3] Citations to the Administrative Record are to the AR number.  Pinpoint citations to other docketed documents are to the page numbers in the CM/ECF-generated headers.

March 14, 2024, after making findings under the Commissioner's five-step evaluation process, the ALJ issued an unfavorable decision.  (*Id.* at 18–39.)

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 8, 2022, the amended alleged onset date.  (*Id.* at 24 ¶ 1.)

At step two, the ALJ found that Plaintiff had the following severe impairments:

> [D]egenerative disc disease of the cervical spine, status post discectomy and fusion procedure, degenerative disc disease of the thoracic spine with scoliosis, degenerative disc disease of the lumbar spine, neuropathy, right hip labral tear, mood disorder, post-traumatic stress disorder (PTSD) with dissociated features, generalized anxiety disorder wit[h] panic attacks, and depressive disorder.

(*Id.* at 24 ¶ 2 (citations omitted).)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the agency's listed impairments.  (*Id.* at 25 ¶ 3.)  Next, the ALJ found that Plaintiff had the following Residual Functional Capacity ("RFC"):

> [T]he claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for six hours in an eight-hour workday for five days a week, and sit for six hours in an eight-hour workday for five days a week. The claimant cannot reach overhead.  The claimant can occasionally push and pull with the extremities.  The claimant can frequently reach (in all other direction[s]), handle, finger, and feel with the upper extremities.  The claimant can have no exposure to hazards, cannot crawl or climb ladders, ropes, or scaffolds, but can have occasional exposure to uneven terrain and can occasionally balance, crawl, crouch, kneel, stoop, and climb ramps and stairs, as

3

> those are defined in the DOT/SOC. In addition, the claimant can have occasional interactions with supervisors and coworkers, but not interactions with the public. The claimant would also be off-task 10 percent of the day.

(*Id.* at 27 ¶ 4.)

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 32 ¶ 5.) The ALJ classified Plaintiff as a younger individual on the alleged onset date. (*Id.* at 32 ¶ 6.) The ALJ categorized Plaintiff as having at least a high school education. (*Id.* at 32 ¶ 7.) The ALJ concluded the transferability of job skills was not an issue because Plaintiff did not have past relevant work. (*Id.* at 32 ¶ 8.)

At step five, the ALJ noted that the vocational expert testified that Plaintiff could perform the occupations of "office helper," with approximately 14,000 jobs available nationally; "merchandize maker," with approximately 137,000 jobs available nationally; and "photo copying machine operator," with approximately 9,000 jobs available nationally. (*Id.* at 33 ¶ 9.) The ALJ concluded that, "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.* at 34 ¶ 9.) Accordingly, the ALJ concluded Plaintiff was not disabled, as defined by the Social Security Act, since February 8, 2022. (*Id.* 34 ¶ 10.)

On August 20, 2024, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1–6.) Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. Section 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's "decision to deny

benefits . . . 'is not supported by substantial evidence or is based on legal error.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009–1010 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1035). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). "If the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

## IV.   DISCUSSION

### A.   Disputed Issues

Plaintiff raises one disputed issue—whether the ALJ failed to provide clear, convincing, and well-supported reasons for discounting Plaintiff's allegations regarding her physical and mental disfunction. (Pl's Br. 6–10.) For the reasons discussed below, the Court finds that reversal and remand for further administrative proceedings are warranted.

///

///

///

5

### B.    Applicable Law

When assessing a claimant's credibility regarding subjective symptom testimony or allegations, the ALJ must engage in a two-step analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison*, 759 F.3d at 1014 (quoting *Lingenfelter*, 504 F.3d at 1035–36). "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" *Id*. (quoting *Smolen*, 80 F.3d at 1282).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. *Id*. at 1014–15; *see also Robbins*, 466 F.3d at 883 ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). The ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the claimant's] ability to perform work-related activities for an adult . . . ." Social Security Ruling 16-3p, 2016 SSR LEXIS 4, at *4 (Mar. 16, 2016).

While the ALJ cannot "delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness," *Trevizo*, 871 F.3d at 678 n.5, the ALJ may

6

consider "prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; . . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and . . . the claimant's daily activities," *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1284). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. *Burrell v. Colvin*, 775 F.3d 1133, 1137–38 (9th Cir. 2014). In addition, the ALJ may consider "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms . . . ." *Smolen*, 80 F.3d at 1284. However, it is improper for an ALJ to reject subjective testimony based "'solely on a lack of objective medical evidence to fully corroborate' the claimant's allegations." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)).

The ALJ must make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)); *see Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" (quoting *Bunnell*, 947 F.2d at 345–46)). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

**C.   Background**

During the January 16, 2024 hearing before the ALJ, Plaintiff testified about her problems and limitations as follows:

Plaintiff was thirty-nine years old (*see* AR 136) and suffered from a spinal cord disorder related to injuries she sustained during a violent incident when she was approximately twenty-one years old (*id.* at 79–80, 86).  Plaintiff "didn't have the best doctors" and "went to a lot of doctors" before learning—sixteen years after the fact—that she had broken her neck and injured her spinal cord.  (*Id.* at 80.)  This improper diagnosis had caused progressive paralysis from the neck down, affecting the nerves in her nek and both arms.  (*Id.*)  Plaintiff also experienced pain due to a tear in her right hip.  (*Id.*)

Plaintiff was in "constant pain" and spent "the majority of [her] day bedridden."  (*Id.* at 78.)  Plaintiff bathed once or twice a week but only showered every couple of weeks, using a shower chair, to wash her hair.  (*Id.*)   Plaintiff had difficulty sitting, was always "surrounded by lots of pillows holding [her] up" and spent "most of the time lying down."  (*Id.* at 79.)  Plaintiff could walk for five or ten minutes at a time, stand for two to four minutes at a time, sit for thirty minutes to two hours at a time, and lift approximately one to three pounds.  (*Id.* at 88.)  Plaintiff had difficulty typing, holding objects, and moving her hands and wrists.  (*Id.* at 79, 89.)  In her prior job, Plaintiff opened "lots of jars," which she could not do anymore.  (*Id.* at 79.)

Plaintiff had difficulty "putting thoughts together and remembering" and would "forget how to spell words that [she had] known how to spell [her] whole life."  (*Id.*)  Plaintiff experienced dizziness "[p]retty much every day."  (*Id.* at 80.)  If she was ever in a car, she would get sick and experience "extreme pain in [her] head and neck area" thereafter.  (*Id.* at 81.)  When traveling short distances, Plaintiff used a cane.  (*Id.*)  When traveling longer distances, Plaintiff used an automatic wheelchair (*id.* at 81), which her doctor, Dr. Jaba Harian, prescribed and

Plaintiff's insurance provided (*id.* at 82, 83). Plaintiff could sit in her wheelchair for one or two hours but was "very exhausted for the next several days." (*Id.* at 81.) At home, Plaintiff had a massage device in her bed. (*Id.* at 82.) When asked if she could walk to the restroom without using a cane, Plaintiff testified that she could do so "[s]ometimes," but that "it takes [her] a while to get there" and she needed to use her massager first. (*Id.*)

Plaintiff took Gabapentin and two other medications for pain, dizziness, spasms, and tingling. (*Id.* at 83.) She also took medication for anxiety and depression. (*Id.* at 83–84.) At the time of the hearing, Plaintiff's doctor "just gave" her a "new medication" which was a self-injection. (*Id.* at 84.) Plaintiff was "scared of needles" and had not taken the new medication "yet." (*Id.*) Plaintiff also used lidocaine patches. (*Id.*) Plaintiff had recently obtained authorization from her insurance provider to make an appointment with a neurologist in order to receive therapy or additional treatment related to her dizziness and/or concussive injuries. (*Id.* at 81.)

When asked if the ALJ "capture[d] everywhere where [Plaintiff was] experiencing pain," Plaintiff responded: "Honestly, no . . . . [L]iterally, every single joint of my body hurts all the time. . . . It's like . . . it's everywhere in my body." (*Id.* at 84.) Plaintiff explained that she experienced pain in her knees, feet, and torso and that her torso pain was "incapacitating" because it was "so sharp" and felt "like lighting." (*Id.*) Plaintiff also experienced jaw pain and migraines. (*Id.*) On a scale of one to ten, Plaintiff reported a pain level seven or eight without medication and four or five with medication. (*Id.* at 85.)

Plaintiff had experienced "a lot of trauma from the violence that led to [her] injury and other injuries on [her] body from an abusive relationship, and [she] had a pretty abusive childhood." (*Id.* at 86.) Related to this, she had PTSD, experienced anxiety and depression, and had several "concern[s] of safety" for which she was in "therapy." (*Id.* at 87–88.)

9

**D.     Analysis**

At the first step of the two-step evaluation, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.* at 28.)  At the second step, however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (*Id.*)

As the ALJ found no evidence of malingering, he was required to provide specific, clear and convincing reasons for rejecting Plaintiff's subjective symptom statements.  *See Garrison*, 759 F.3d at 1014–15.  The Court may review only those reasons that the ALJ specifically cited as grounds to reject Plaintiff's subjective symptom testimony.  *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."); *Garrison*, 759 F.3d at 1010 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

The ALJ provided three reasons for discounting Plaintiff's subjective symptom testimony:  (1) her statements were inconsistent with her treatment plan; (2) her statements were inconsistent with her daily activities; and (3) her statements were inconsistent with objective medical evidence in the case record.  (AR 28–32.)

For the reasons stated below, the ALJ failed to provide a clear and convincing reason based on substantial evidence in the record to reject Plaintiff's subjective symptom testimony.

### 1.     Conservative Treatment

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995));

10

*see also Tommasetti*, 533 F.3d at 1039 (holding that a claimant's favorable response to conservative treatment permitted an inference that the pain was "not as all-disabling as he reported").  Here, the ALJ discounted Plaintiff's subjective symptom testimony because "the treatment records . . . imply that [Plaintiff's] doctors have no over-arching treatment plan nor that these doctors find that [Plaintiff] needs any specific treatment, aside from managed medication, for her impairments."  (AR 31.)  For the reasons stated below, the ALJ failed to provide clear and convincing reasons based on substantial evidence in the record for his conclusion.

a)   *Plaintiff's Physical Impairments*

The ALJ discredited Plaintiff's subjective symptom testimony about her physical impairments based on three findings.  *First*, the ALJ considered Plaintiff's testimony that she used a cane and wheelchair (or "scooter") and found that, while this was consistent with evidence documenting that Plaintiff was using a cane and/or scooter when examined by her treating physicians, it was inconsistent with the record because it did not contain a prescription for a cane or scooter and "largely document[ed] a normal gait."  (*Id.*)  *Second*, the ALJ found that the record contained "no evidence of [Plaintiff] receiving pain relief injections."  (*Id.*)  *Third*, the ALJ found that the record contained no evidence that Plaintiff required additional surgical intervention since her 2022 discectomy or that she required revision to this procedure.  (*Id.*)  These are not clear and convincing reasons for discrediting Plaintiff's subjective symptom testimony.

As an initial matter, the ALJ did not provide a single citation to support his conclusion that Plaintiff's testimony was *inconsistent* with her treatment plan.  Rather, he provided three citations in support of his finding that Plaintiff's testimony was *consistent* with her treatment plan as follows:  (1) physical therapy and occupational therapy treatment notes dated July 10, 2020 through March 29,

2021 corroborated Plaintiff's testimony that she attended physical therapy (*id.* at 442–486, 639–725); (2) Dr. Minas Harutunian's treatment note dated November 5, 2022 corroborated Plaintiff's testimony that she used a scooter (*id.* at 610); and (3) Dr. Randal Caldron's treatment note dated December 4, 2022 corroborated Plaintiff's testimony that she used a cane and scooter (*id.* at 619).  As for the ALJ's findings regarding *inconsistency*, he pointed to nothing more than a lack of evidence to fully corroborate Plaintiff's testimony.  It is improper for an ALJ to reject subjective testimony based "'solely on a lack of objective medical evidence to fully corroborate' the claimant's allegations." *Bray*, 554 F.3d at 1227 (quoting *Bunnell*, 947 F.2d at 345).

Regardless, the record does support Plaintiff's testimony—indeed, the very portions of the record to which the ALJ cited support such and contradict the ALJ's findings.  Plaintiff testified that she used a cane to walk short distances and a scooter to travel longer distances and that her doctor had prescribed such scooter. (AR 81–83.)  The ALJ found that the record failed to evidence such prescription and "largely documented" Plaintiff's normal gait.  (*Id.* at 31.)  But Dr. Caldron's December 4, 2022 treatment note clearly states that "[Plaintiff] was prescribed a scooter after her surgery." (*Id.* at 619.)  It also states that Plaintiff "was able to walk with a normal gait and balance *but* [got] tired and fatigued." (*Id.* (emphasis added).)  And Dr. Harutunian's November 5, 2022 treatment note clearly states that Plaintiff had "poor posture." (*Id.* at 610.)

As for the ALJ's statement that the record contained "no evidence of [Plaintiff] receiving pain relief injections" (*id.* at 31), this is entirely consistent with Plaintiff's testimony.  Plaintiff testified that she had recently obtained a prescription for self-injecting medication and that she had not used it "yet" due to her fear of needles. (*Id.* at 84.)  To the extent the ALJ's conclusion is based on an inference that Plaintiff's pain testimony is inconsistent with her failure to follow prescribed treatment or pursue more aggressive treatment, the ALJ failed to consider Plaintiff's

explanation for such.  *See* SSR 16-3p, 2016 LEXIS 4, at *25 (an ALJ also must "consider and address reasons for not pursuing treatment that are pertinent to an individual's case."); *see also Orn*, 495 F.3d at 638 (noting that an ALJ is required to consider "any explanations that the individual may provide, or other information in the case record, that may explain" the individual's failure to follow a treatment plan).

Finally, the ALJ's statement that the record contained no evidence of Plaintiff needing additional surgery or revision to her 2022 surgery (*id.* at 31) is entirely unexplained and fails to demonstrate any inconsistency between Plaintiff's testimony and her treatment.  In sum, Plaintiff testified that she continued to experience pain after her surgery and continued to seek and engage in treatment for such pain; the record documents such surgery and subsequent treatment.  To the extent the ALJ's conclusion is based on an inference that Plaintiff's pain testimony is inconsistent because such pain would necessarily require additional surgical intervention, such conclusion is entirely speculative.  At best, the ALJ points to evidence demonstrating Plaintiff's pain was so severe that she underwent surgery.  This is consistent with her testimony.

### b)  *Plaintiff's Mental Health Impairments*

The ALJ discredited Plaintiff's subjective symptom testimony about her mental impairments as follows:

> [T]he claimant had no history of admission to a psychiatric unit, and she apparently has not received psychotherapy treatment, or other medical interventions in a mental health facility. The claimant also had no documented history of receiving therapy from a psychiatrist or psychologist, and there is no documentation of the claimant's treatment with Ms. Hart

///

(other from Ms. Hart's statement that she has seen the
claimant since February 2022 per Exhibit B18F).

(*Id.*)

Again, the ALJ only cited evidence that corroborates Plaintiff's testimony. Plaintiff testified that she was in therapy to treat her PTSD, depression, and anxiety. (*Id.* at 87–88.)  The ALJ cited to Licensed Marriage and Family Therapist Amy Hart's statement documenting that Plaintiff had been attending individual psychotherapy on a weekly basis since February 2022 to treat her PTSD stemming from "a history of emotional abuse in childhood, and subsequent later traumas, including multiple incidents of sexual abuse and domestic violence into adulthood." (*Id.* at 744.)  This is entirely consistent with Plaintiff's testimony.

Again, the ALJ's findings regarding any purported *inconsistency* in Plaintiff's testimony are improperly supported by nothing more than a lack of evidence to fully corroborate Plaintiff's testimony.  *Bray*, 554 F.3d at 1227 (noting it is improper for an ALJ to reject subjective testimony based "solely on a lack of objective medical evidence to fully corroborate the claimant's allegations.") (quotation omitted).  Moreover, the Court agrees with Plaintiff that the ALJ's statement that Plaintiff "had no history of admission to a psychiatric unit" and "no history of receiving therapy from a psychiatrist or psychologist" is not accurate. (Pl.'s Br. 7.)  Indeed, in Dr. Harutunian's November 5, 2022 treatment note she clearly states that Plaintiff was admitted to a psychiatric hospital in 2013, subsequently received non-hospital psychiatric treatment, and "is currently seeing a . . . psychiatrist, Dr. Andrea Best."  (*Id.* at 611.)  This is consistent with Plaintiff's testimony and inconsistent with the ALJ's findings.

\*\*\*

///

///

14

For the reasons stated above, the ALJ failed to provide clear and convincing reasons based on substantial evidence in the record for discrediting Plaintiff's subjective symptom testimony.


### 2. Activities of Daily Living

An ALJ may consider activities of daily living in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). An ALJ properly may reject a claimant's subjective symptom testimony if the claimant's conduct or daily activities are inconsistent with the claimant's expressed limitations. *See, e.g.*, *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012); *see Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant's testimony regarding daily living activities may undermine a disability claim in two ways: (1) the activity testimony may contradict other testimony about severity of symptoms, or (2) the activities show that the claimant is able to spend a substantial part of his or her day engaged in physical functions transferable to a work setting. *See Ghanim*, 763 F.3d at 1165. However, it is error to "merely recite[] plaintiff's activities without taking into account her alleged limitations in completing those activities." *See Robinson v. Berryhill*, No. ED CV 17-2238-PLA, 2018 U.S. Dist. LEXIS 133911, at *24 (C.D. Cal. Aug. 8, 2018).

Here, the ALJ discredited Plaintiff's subjective symptom testimony for the following reason: "The claimant's activities suggest that the claimant has a better capacity than she has stated in the record." (AR 32.) The ALJ identified three activities that purportedly were inconsistent with Plaintiff's testimony: (1) microwaving meals; (2) cleaning the bathroom sink and mirror; and (3) online

shopping while getting curbside groceries.  (*Id.* at 31.)  The ALJ relied on Exhibit B3E, an October 24, 2022 Function Report (*id.* at 353–361), in making this determination (*id.* at 31).  With respect to microwaving meals, Plaintiff reported that her "roommate makes/buys dinner [and] all meals" (*id.* at 352) and to the extent she could prepare her own meals, she could "only microwave meals" (*id.* at 355).  With respect to cleaning, Plaintiff reported that the only household chore she could perform was "clean[ing] the bathroom sink/mirror" but that she "could not scrub hard" and that she relied on her roommate for all other cleaning.  (*Id.*)  With respect to online shopping, Plaintiff reported that her shopping was limited to "curbside pickup [for] groceries or physical aids."  (*Id.* at 356; *see also id.* at 357.)

These daily activities were not a valid reason for rejecting Plaintiff's subjective symptom testimony because "the ALJ did not elaborate on *which* daily activities conflicted with *which* part of [Plaintiff's] testimony."  *Burrell*, 775 F.3d at 1138.  An ALJ may reject a claimant's testimony about the severity of their symptoms only by providing specific, clear, and convincing reasons for doing so, which "requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds not to be credible . . . explain what evidence undermines that testimony.'"  *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020); *Brown-Hunter*, 806 F.3d at 494 (finding legal error where the ALJ failed to identify the testimony she found not credible and did not link that testimony to the particular parts of the record supporting her non-credibility determination); *Treichler*, 775 F.3d at 1103 ("The ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'" (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988)).  Here, the ALJ failed to link any parts of the record to any testimony—he merely concluded that microwaving meals, light cleaning, and picking up curbside groceries—"suggest[ed] . . . a better capacity" than Plaintiff stated on the record.  (*Id.* at 33.)  The ALJ cited nothing in the record indicating that

Plaintiff's participation in the identified activities exceeded the activity to which she testified.

In fact, Plaintiff did not testify—nor did the ALJ inquire—about Plaintiff's activity regarding meal preparation, cleaning, or shopping. (*See* AR 78–89). With respect to Plaintiff's daily activities she testified only as follows: Plaintiff was bedridden most of the day (*id.* at 78); she bathed once or twice a week and infrequently showered (*id.*); she could walk for five or ten minutes at a time, stand for two to four minutes at a time, sit for thirty minutes to two hours at a time, and lift approximately one to three pounds (*id.* at 88); she used a cane to walk short distances and a scooter to travel long distances (*id.* at 81); she experienced sickness and pain during and after car rides but occasionally went to a museum or library with her roommate (*id.*); and she relied on her roommate for physical and emotional support (*id.* at 87–88). These statements are entirely consistent with the Function Report which documents, among other things, that: Plaintiff was "physically incapable of sitting up for prolonged time" and "physically incapable of showering more than one day per week" (*id.* at 353); she experienced "excruciating pain when putting a shirt overhead" and had an "inability to be upright and lather body" when bathing (*id.* at 354); her roommate drove her "to the park at least once a week to eat in the car" (*id.* at 356); she went to a "museum or botanical garden in a wheelchair for 2 hours max[imum] every few weeks or months" (*id.* at 357); she had difficulty trusting anyone and "lost a lot of friends, stopped going out to dance, never go[es] to the movie theater, cannot sit up at dinner, and do[es not] date" (*id.*).

To whatever extent the ALJ found Plaintiff's ability to perform these activities contradicted her testimony regarding her strength, energy, or mobility, such a finding mischaracterizes the evidence. Notably, the ALJ omitted the fact that, while Plaintiff could clean the sink and mirror, she could "not scrub hard, sometimes having <u>no</u> cleaning effect." (*Id.* at 355 (emphasis added by Plaintiff).) An adverse credibility finding based on such a characterization is erroneous. *See Rawa v.*

17

*Colvin*, 672 F. App'x 665, 666 (9th Cir. 2016) (finding that that ALJ mischaracterized plaintiff's level of activity because it omitted "a number of salient and dispositive facts and details, and thus concluding that "[s]uch an inaccurate representation of the record can not constitute a specific, clear, and convincing reason for rejecting [the plaintiff's] testimony."). Moreover, the Court sees no clear contradiction between Plaintiff's ability to complete basic household chores—such as microwaving meals and lightly cleaning the bathroom sink or mirror—and the limiting effects of her symptoms. *Ghanim*, 763 F.3d at 1165 (finding "daily activities, which included completing basic chores, sometimes with the help of a friend, and attending occasional social events" did not support the ALJ's adverse credibility finding).

Finally, to the extent the ALJ concluded that the identified activities translated to an ability to sustain employment, the Ninth Circuit has been clear that "impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Indeed, a claimant need not be "utterly incapacitated" to qualify for benefits. *Id.* (quoting *Smolen*, 80 F.3d at 1287 n.7). To the contrary, claimants "should not be penalized for attempting to lead normal lives in the face of their limitations," and "[o]nly if [the claimant's] level of activity were inconsistent with [the claimant's] claimed limitations would these activities have any bearing on [the claimant's] credibility." *Id.* (quoting *Reddick*, 157 F.3d at 722 (first alteration in original)). The failure of an ALJ to recognize the critical differences between activities of daily living and activities in a full-time job—to wit, the flexibility in scheduling at home, the ability of get help from others at home, and the absence of minimum standards of performance—is a "deplorable[ ] feature of opinions by administrative law judges in social security disability cases." *Id.* (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)). The evidence of Plaintiff's daily activities the ALJ identified does not support the conclusion the ALJ

18

drew regarding Plaintiff's "better capacity" and does not refute the limitations to which Plaintiff testified.  For the reasons discussed above, the Court finds that Plaintiff's testimony is wholly consistent with the ability to microwave meals, perform light cleaning, pick up curbside groceries and the inability to function in a workplace environment.

For the reasons stated above, Plaintiff's daily activities were not a clear and convincing reason based on substantial evidence in the record to reject Plaintiff's subjective symptom testimony.

### 3.    Objective Medical Evidence

The parties dispute whether Plaintiff's subjective symptom testimony was inconsistent with the objective medical evidence.  (Pl.'s Br. 6–9; Def.'s Br. 5–9.)  Even if the objective medical evidence did not corroborate Plaintiff's subjective allegations, lack of objective medical evidence is a legally insufficient reason on its own to discount Plaintiff's symptom testimony.  *See, e.g., Bunnell*, 947 F.2d at 345 ("[A]n adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."); *Robbins*, 466 F.3d at 883 ("While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence.").  Here, even assuming the record supports the ALJ's reasoning regarding the lack of support from objective medical evidence, the ALJ did not identify any other clear and convincing reason, supported by substantial evidence, to discount Plaintiff's subjective symptom statements.  Standing alone, the purported lack of support from objective medical evidence is not a legally sufficient reason to discount Plaintiff's symptom testimony.

* * *

///

19

In sum, the ALJ's decision does not provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom testimony of physical or mental dysfunction.  Reversal is warranted.

### E.        Remand for Further Proceedings

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.  *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *See id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate.  *See McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011).  Specifically, remand is warranted here for reconsideration of Plaintiff's symptom statements because the ALJ's failure to provide legally sufficient reasons for discounting such statements in the decision prevents this Court from meaningfully determining whether the decision is supported by substantial evidence.  *See Treichler*, 775 F.3d at 1103 ("Because 'the agency's path' cannot 'reasonably be discerned,' we must reverse the district court's decision to the extent it affirmed the ALJ's credibility determination." (citation omitted)).

///

///

///

///

///

///

20

## V.  ORDER

The Court **ORDERS** that judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

**IT IS SO ORDERED.**

DATED: March 2, 2026

_____
HONORABLE MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

21